UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 24-CR-80103-CANNON

UNITED STATES OF AMERICA

v.

DUSTIN SEAN McCABE,

    Defendant.
_____/

**GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION TO SEVER**

The United States of America, by and through the undersigned Assistant United States Attorney, respectfully submits this Response to the Defendant's Motion to Sever, DE 30:

The Defendant's Motion argues under each of Rules 8(a) and 14 of the Federal Rules of Criminal Procedure (the "Rules") that this Court should take the extraordinary step of holding two separate trials, one for the first two counts (seaman's manslaughter and false statements) and another for the final three (wire fraud),[1] but neither argument holds water. As to Rule 8(a), the facts of this case—with the Defendant's negligent killing of M.C.G.F. leading to his business shutting down and then his engaging in Paycheck Protection Program ("PPP") fraud to buoy himself financially shortly thereafter—leave the Indictment's five counts well within the Eleventh Circuit's broad construal of Rule 8(a) joinder, and the Motion provides no law or facts about this case suggesting otherwise. On the Rule 14 front, severance is not proper because the Defendant cannot show the compelling prejudice needed to warrant severance and because

---

[1] Although the Motion facially requests that Count 1 be severed from all other counts, this Response assumes that the Motion intended to sever the three wire fraud counts (Counts 3-5) from the other two counts. The Government has conferred with the defense, and it confirmed that this assumption is correct. The defense's actual intent is apparent from the Motion asking Count 1 to be severed based on the mistaken notion that "Count 2-5 allege financial fraudulent activity" in 2021, Mot. at 1, when in fact Count 2 concerns a false statement made on March 5, 2020.

judicial economies favor trying all counts here, where witnesses have testimony relevant to both sets of charges and where proving the PPP fraud inherently involves proving that the business had shut down—which happened as a direct result of the victim's death. The sum of all this is that this Court should deny the Defendant's extreme request, instead permitting this mine-run multi-count case to proceed as a single trial like virtually every other case of this kind.

I.     RELEVANT FACTS

The Government more fully recited the facts of this case in its Motion *in Limine*, *see* DE 28 at 2-8, and incorporates those by reference. The following supplements those facts while highlighting the ones relevant to the Defendant's Motion:

The basic narrative of what happened here and what the Government will prove at trial is straightforward. In early 2020, the Defendant operated a business called Florida Scuba Charters, Inc. ("Florida Scuba"), and he bought the M/V SOUTHERN COMFORT (the "Vessel") for the business in March that year. Although he falsely told the United States Coast Guard ("USCG") that he intended to use the Vessel solely for recreational purposes, the Defendant's actual plan was to use the Vessel to operate Florida Scuba's scuba charters. Within days of operating the Vessel for that purpose, though, the Defendant negligently operated the Vessel in a manner— detailed at length in the Government's other filings, *see* DE 28 at 2-7; DE 29 at 7-9—that led to M.C.G.F.'s death. The witnesses the Government intends to call in proving these facts include S.B., who will testify about (1) the Defendant telling her about purchasing the Vessel for scuba, (2) his refitting the Vessel for scuba, (3) his lack of competence in operating it, (4) her knowledge of J.H.'s injury that occurred on March 28, and (5) that after M.C.G.F.'s death, the Defendant told S.B. that he refused to send the USCG a report of the marine casualty because he did not believe he needed to and because he felt like the USCG was "out to get him." The

Government may also call J.S., who is the general manager of the Palm Beach Marina who would testify about the Defendant hitting near the sea wall on the North Palm Beach Bridge, which he was aware of because of his responsibilities at the marina.

The Defendant's negligent killing of M.C.G.F. effectively (and appropriately) killed Florida Scuba's business. Within two days of her death, the Defendant sent text messages to a USCG officer acknowledging that Florida Scuba was shut down and that he had no income:

> Tue, Mar 31, 9:38 AM
>
> I got your voicemail and am working on getting you the things you need. I do not have access to a computer or my files right now.
>
> The company is shut down mostly so having them send it to me is difficult.
>
> My life is in shambles right now. Dealing with this, the mental side of this, the physical side of this, a soon to be ex-wife, not having a place to live, the business being shut down, and no income.

Just three days after these text messages, the Defendant asked J.S. to scan and email a handwritten PPP application—titled "Dustin 1" to signify that it was the Defendant's scan—in which the Defendant claimed that his monthly payroll was $7,300 per month:



Less than a week after this April 3 handwritten version of a PPP application, the Captain of the Port for Miami issued an order forbidding the Defendant from operating the Vessel for hire. The Defendant did not sell the Vessel until November 2020.

Yet that did not stop the Defendant from representing that Florida Scuba was engaging in business in PPP applications. Indeed, when the Defendant applied for a PPP loan the following month through Celtic Bank, his claimed monthly payroll had increased from what he'd written in his April 3 handwritten draft, then seeking a loan of $18,750 that he secured shortly after applying. Then, on February 2, 2021, the Defendant applied for and received his second PPP loan, this one for even more money, $20,285. After securing these two loans, the Defendant advised S.B. to secure loans herself through the bank he had used, with S.B. recalling the Defendant boasting that his loan was for $20,000, with S.B. not knowing how he qualified for that amount based on how small his business was.

4

But things didn't end there. The Defendant formally dissolved Florida Scuba on May 13, 2021, only to apply for loan forgiveness on his first PPP loan through Cross River Bank the very next day. The loan forgiveness application the Defendant submitted was riddled with falsehoods, including that he had five employees at the time, that he spent every nickel of the loan on payroll, and that he'd complied with the spending rules for PPP loans. The Defendant then did the same thing for the second PPP loan in August 2021, again claiming five employees despite Florida Scuba being dissolved, again claiming that he spent every nickel of the loan on payroll, and again claiming that he'd complied with the spending rules for PPP loans.

## II. LEGAL STANDARD

"The circumstances justifying severance are 'few and far between'; a defendant seeking severance 'must carry the heavy burden of demonstrating that compelling prejudice would result from a joint trial.'" *United States v. Mosquera*, 886 F.3d 1032, 1041 (11th Cir. 2018) (quoting *United States v. Lopez*, 649 F.3d 1222, 1234 (11th Cir. 2011)). To evaluate a motion to sever, this Court should conduct a two-step analysis: it should first decide "whether the initial joinder of charges was proper" under Federal Rule of Criminal Procedure 8(a) and then decide whether severance is appropriate under Federal Rule of Criminal Procedure 14. *United States v. Hersh*, 297 F.3d 1233, 1241 (11th Cir. 2002). In conducting its analysis, the Court should consider both the face of the Indictment and facts "the prosecutor proffers … which will show the connection between the charges." *United States v. Dominguez*, 226 F.3d 1235, 1241 (11th Cir. 2000). From there, only "if the indictment fails to show and the prosecutor fails to proffer a sufficient basis in the expected evidence to justify joinder, [should] a severance be ordered." *Id.* The purpose of these strictures is clear: that "the prospect of duplicating witness testimony, impaneling additional jurors, and wasting limited judicial resources suggests that related offenses should be

5

tried in a single proceeding." *United States v. Blair*, 661 F.3d 755, 768-69 (4th Cir. 2011) (quotations omitted).

### III.   ARGUMENT

Defendants charged with multiple crimes—a violent spree, a long-running fraud, or (like here) one crime that leads to another—often ask courts to sever one count from another, claiming that the one crime necessarily prejudices the jury as to the other. Defendants seldom succeed, however, because that's not how our justice system works. Rather, the Rules and the Eleventh Circuit specifically and deliberately favor consolidating charges into one case and one trial, which is why the Eleventh Circuit "construe[s] [Rule 8(a)] broadly in favor of initial joinder," *Hersh*, 297 F.3d at 1241, and why "[t]he circumstances justifying severance are few and far between," *Mosquera*, 886 F.3d at 1041 (quotations omitted). That's also why a defendant "seeking severance [under Rule 14] must carry the heavy burden of demonstrating that compelling prejudice would result from a joint trial." *Id.* (quotations omitted).

Here, the Defendant fails establish misjoinder under Rule 8(a) or to "carry the heavy burden" required for a Rule 14 severance. As to Rule 8(a), the Defendant cannot show that the charges were improperly joined because the counts are logically related and intertwined, involving overlapping evidence and witnesses and with the Defendant's purchase of the Vessel and killing of M.C.G.F. not only forming the impetus for his PPP fraud but also serving as substantive evidence that his Florida Scuba business was not operating in 2020 and 2021 as he claimed it to be. As to Rule 14, there is no compelling prejudice that would result here or outweigh the efficiency considerations that favor trying the counts together—namely, shared witnesses and shared facts that would be required at both trials. Indeed, the Motion's arguments about prejudice, such as that trying the counts together would prejudice the defendant as to the

6

seaman's manslaughter charge or as to his ability to testify, have no basis in law and are conclusory claims that cannot form a basis for severance. For these reasons, this Court should deny the Motion.

> **A. The False Statements, Seaman's Manslaughter, and Wire Fraud Charges were Properly Joined under Federal Rule of Criminal Procedure 8(a).**

To start, the wire fraud charges relating to the Defendant's PPP loans were properly joined to the seaman's manslaughter and false statement counts because the false statement and resulting seaman's manslaughter "provide[d] the impetus for the" wire fraud, which is "sufficient to constitute a common scheme for joinder purposes," *Dominguez*, 226 F.3d at 1239, and the false statements charge is "of the same or similar character" as the wire fraud charges and is inextricably intertwined with the PPP fraud in the same way that the seaman's manslaughter is.

To see why joinder was proper here, it helps to begin with first principles. The basic purpose of joinder is "to promote judicial economy and efficiency," *United States v. Weaver*, 905 F.2d 1466, 1476 (11th Cir. 1990), with those concerns including "avoid[ing] expensive and duplicative trials," *United States v. Koen*, 982 F.2d 1101, 1111 (7th Cir. 1992), and unnecessarily "duplicating witness testimony, impaneling additional jurors, and wasting limited judicial resources," *United States v. Mir*, 525 F.3d 351, 357 (4th Cir. 2008). That's why the Eleventh Circuit (like all others) holds that joinder is "construed broadly in favor of initial joinder," *Hersh*, 297 F.3d at 1241, and it's also why the Eleventh Circuit's favoring of joinder is even reflected in its basic pattern jury instructions, which are designed to facilitate trying multiple counts in a way that is fair to defendants. Specifically, the Eleventh Circuit's Basic Instruction 10.2 provides that "[e]ach count of the indictment charges a separate crime" and that they "must consider each crime and the evidence relating to it separately," Eleventh Circuit Pattern Instruction B10.2, and the Eleventh Circuit regularly points to jury instructions in the severance context to explain why

7

the severance request is improper, *see, e.g., Bowers*, 661 F.3d at 423 (citing Pattern Instruction B10.2); *Slaughter*, 708 F.3d at 1213.

And just as the Eleventh Circuit favors joinder as a general matter, so too is its construal of Rule 8(a)'s joinder criteria correspondingly broad. Rule 8(a) provides for three circumstances justifying joinder: when charges (1) "are of the same or similar character," (2) "are based on the same act or transaction," or (3) "are connected with or constitute parts of a common scheme or plan," and the Eleventh Circuit has explained the broad scope of each. For crimes to be "of the same or similar character," "the offenses need only be similar in category, *not* in evidence." *Hersh*, 297 F.3d at 1241 (emphasis in original). By way of example, the *Hersh* court cites *United States v. Cartwright*, 632 F.2d 1290, 1293 (5th Cir. 1980), where fraudulent misapplication of corporate funds and false statements made to other lenders were properly joined because they were "substantially similar in character because all of the offenses were crimes of deceit involving federally insured lending institutions." Next, as to whether charges are "based on the same act or transaction," the Eleventh Circuit broadly considers whether "the government had to prove the same facts to convict the defendant" for the counts and whether a particular instrumentality "was a crucial element of both crimes." *United States v. Muller*, 698 F.2d 442, 444 (11th Cir. 1983). And finally, as to whether counts "are connected with or constitute parts of a common scheme or plan," the Eleventh Circuit has held that "the fact that one illegal activity provides the impetus for the other illegal activity is sufficient to constitute a common scheme for joinder purposes." *Dominguez*, 226 F.3d at 1239.

Seeing how the Eleventh Circuit applies these Rule 8 principles to other cases joining violent crimes and fraud illustrates these factors' broad scope. In *United States v. Condon*, 132 F.3d 653, 658 (11th Cir. 1998), the Eleventh Circuit rejected the defendant's severance appeal

8

where he was tried for mail fraud alongside his co-defendant who was tried for both the mail fraud and arson-related offenses because limiting instructions made clear who was charged with what. In *United States v. Mentor*, 570 F. App'x 894, 899 (11th Cir. 2014), the circuit court approved of joining "robbery/homicide counts" and "fraud counts" because the defendant had stolen a postal key in the initial robbery and then later used it "to get personal information from locked mailboxes and then use that information to file false tax returns to receive false tax refunds on debit cards." The same principles guided *United States v. Fernandez*, 374 F. App'x 912, 919 (11th Cir. 2010), where the Eleventh Circuit affirmed a district court's refusal to sever a stolen firearm charge from other counts charging the carjacking at which the defendant came to possess the firearm. In so doing, the court reasoned that the "possession of the stolen Beretta began with, and was caused by," the other crimes and that they were "thus from the same course of events." *Id*. Similarly, in *Dominguez*, the Eleventh Circuit affirmed a district court declining to sever mortgage fraud charges from a drug conspiracy because "the fact that one illegal activity provides the impetus for the other illegal activity is sufficient to constitute a common scheme for joinder purposes." 226 F.3d at 1239. So too in *United States v. Smalley*, 754 F.2d 944, 946-47 (11th Cir. 1985), where the circuit court approved of joinder of tax and extortion counts despite the defendant arguing that the Government had failed to prove the direct causal relationship because the Government's evidence proved a "logical relationship between the tax and extortion counts required for joinder under Rule 8(a)." As a final example, in *United States v. Tidmore*, 893 F.2d 1209, 1210 & n.2 (11th Cir. 1990), the circuit court held a defendant's severance appeal after he tried and convicted of wire fraud alongside attempted murder and kidnapping appealed based on severance to "have no merit and warrant no discussion."[2] Which is all to say

---

[2] *See also, e.g., United States v. Rickerson*, No. 23-4497, 2024 U.S. App. LEXIS 20989, at *3

9

that while the Defendant cries foul of the very idea of joining a crime involving violence with one involving fraud in a conclusory manner, *see* Mot. at 1-2, the Eleventh Circuit has uniformly held joinder proper in these cases.[3]

Here, each of the three possible bases for Rule 8(a) joinder—that the offenses are part of a common scheme or plan, that they involve the same transactions or acts, or that they are of the similar or same character—show that joinder here was proper.

**1. All Five Counts are Part of a Common Scheme or Plan Under Rule 8(a).**

First, Rule 8 joinder is proper here because all five counts are part of "a common scheme or plan." Fed. R. Crim. P. 8(a). The story of this case is straightforward: the Defendant bought the Vessel to operate Florida Scuba in March 2020 and lied about its purpose to the USCG (Count 2), he had to shutter his Florida Scuba business after killing M.C.G.F. through his negligence (Count 1), he was out of money as a result, and he resorted to PPP fraud to deal with it (Counts 3-5). In that way, each of the counts have a "logical relationship" to the others and form a natural part of the narrative here, *Smalley*, 754 F.2d at 947, with the Defendant's killing of M.C.G.F. and relatedly being ordered to cease operating the Vessel tending to prove that he was not legitimately operating Florida Scuba as he claimed in his PPP loan applications. Moreover, the fact that the Defendant had to shut down Florida Scuba's charter business provides the motive or "impetus" for his PPP fraud, which is itself "sufficient to constitute a

---

(4th Cir. Aug. 20, 2024) (robbery and fraud joinder proper since "evidence that Rickerson had a motive to steal money—whether from a bank through armed bank robbery or through fraudulent loan applications and identity theft—and that he participated in a scheme to unlawfully obtain that money overlapped and would have been admissible at both trials if the counts were tried separately."); *United States v. Cooper*, No. 96-4738, 1998 U.S. App. LEXIS 1405, at *6 (4th Cir. Jan. 28, 1998) (joinder of robbery and bankruptcy fraud joinder proper where "the bankruptcy provided an impetus for the bank robberies which in turn gave rise to his bankruptcy fraud.").

[3] The undersigned is not aware of any case where the Eleventh Circuit has vacated the joinder of a violent crime on the one hand and a fraudulent crime on the other.

common scheme for joinder purposes." *Dominguez*, 226 F.3d at 1239; *see also United States v. Davis*, 752 F.2d 963, 972 (5th Cir. 1985) (because "obstruction charges grew out of Davis' attempt to avoid implication in or the detection of a fraudulent scheme," they had a "logical relationship to underlying fraud crimes.").

These connections are apparent not just through the facts the Government proffers in this Response, but even on the face of the Indictment itself. Specifically, the wire fraud counts' "Manner and Means" section fully recounts the events from March 2020 onward to explain the nature of the crime and that the Defendant had been forced to stop operating Florida Scuba in the months before he began his PPP loan fraud. *See* DE 3 at 6-8. The Indictment does so because the fallout from M.C.G.F.'s death is crucial to proving and understanding the PPP fraud here, showing not just why it happened but also proving that the claims the Defendant made in his PPP application are false—that he wasn't operating his business, didn't generate the revenue he claimed, and didn't have the employees he claimed. By pleading not guilty to the PPP fraud here, the Defendant necessarily puts his operation of Florida Scuba and the Vessel—the business filing for the loan and that business's means of generating the revenue that the Defendant claimed—at issue. By that same token, proving that the Defendant wasn't actually operating Florida Scuba and didn't actually use the funds for the reasons he claimed at the time necessarily requires that the Government be permitted to prove beyond any reasonable doubt how the jury will know those things weren't so: that the Defendant had negligently killed M.C.G.F. when running his business in March 2020 and was forbidden from further operations, as alleged in the Indictment. The Indictment includes these facts because they tend to show that he was not operating as he claimed for a simple reason: it's precisely what we will need to prove about Florida Scuba at trial for the wire fraud counts. And for those same reasons, this Court should find that the Indictment

itself facially establishes the "logical connection" needed to sustain the joinder of the five counts. *Smalley*, 754 F.2d at 947; *Dominguez*, 226 F.3d at 1239 ("The government's response to Dominguez's motion to sever explained why the two groups of charges were properly joined: Concealing income from the drug activity was the motive for the mortgage fraud.").

On top of the four corners of the Indictment, though, the Court should hold that the evidence proffered in Section I above reinforces that joinder here is proper by showing just how temporally and conceptually linked M.C.G.F.'s death is to PPP fraud. Specifically, the Defendant's text messages show that his killing M.C.G.F. was the cause of his business shutting down and that he had "no income" as a result. *See supra* at 3. To prove that, the Government would need to show not just that the Captain of the Port issued an order forbidding it but also that the Defendant was highly unlikely to be operating the business because he'd committed such egregious negligence that he'd killed someone—something that by his own admission had left his life in "shambles" from the "mental side of it," among other things. In that respect, the Government will be presenting evidence at trial that all-the-more establishes the interrelated nature of the five counts charged here.

Further proof that the counts were properly joined and are conceptually linked lies in the witnesses and evidence the Government will present. As explained above, S.B.'s testimony will concern all five counts, and J.S. similarly has testimony that impacts both the seaman's manslaughter and the PPP fraud. Beyond that, a separate PPP fraud trial would require re-calling several witnesses regarding the Defendant's Florida Scuba operations in March 2020 to explain M.C.G.F.'s death and how it shut down his business and had the financial psychological impact

that he admits to—all things that tend to prove his motive for committing PPP fraud.[4] As a result, severance would defeat "the promot[ion of] judicial economy and efficiency" that lies at the heart of the law governing Rule 8(a). *Weaver*, 905 F.2d at 1476. The sum of all this is that the Indictment's five charges were properly joined under Rule 8(a) as part of a common scheme or plan under Eleventh Circuit law, and this Court should deny the Motion accordingly.

    **2. All Offenses are Part of the Same Act or Transaction Because They all Involve the Vessel and the Entity Florida Scuba.**

Beyond the crimes' logical links, they also share the same instrumentalities: the entity Florida Scuba and the Vessel. Both were used, in some way, to facilitate every crime at issue here, which is enough on its own terms for joinder to be appropriate. *See, e.g., Muller*, 698 F.2d at 444 (joinder proper where the same money was involved in all crimes); *Mentor*, 570 F. App'x at 899 (postal key stolen in homicide then used later for fraud); *Fernandez*, 374 F. App'x at 919 (handgun stolen at carjacking the subject of later felon-in-possession charge). For the seaman's manslaughter charged as Count 1, the Defendant was negligently operating the Vessel in the name of his Florida Scuba business the day of M.C.G.F.'s killing. As to Count 2, the Defendant's false statement concerned the Vessel's purpose, which directly implicates it in the crime, and the Defendant did so in furtherance of operating the Vessel for his Florida Scuba business. And finally, the Defendant's PPP fraud charged in Counts 3-5 involves Florida Scuba's business continuing its operations through mid-2021, which again implicates both the business itself and

---

[4] These logical connections are also why this case is manifestly unlike the case the defense cites, *United States v. Holloway*, 1 F.3d 307, 310 (5th Cir. 1993), where the court vacated a conviction when the government charged a robbery spree along with being a felon in possession of a firearm based on the defendant's arrest two months after the spree when there was "no allegation that he … had used the weapon in a robbery, or that the weapon was in any way connected to the charged robberies," and where, "[p]lainly speaking, [the court could] see no basis for the United States Attorney to have included this weapons charge in the indictment in the first place unless he was seeking to get before the jury evidence that likely would be otherwise inadmissible." *Id*.

the way it generates business: the Vessel. In this respect, the counts are linked not just conceptually but also in that they involve the use of the same corporate and physical entities, which provides an independent basis for this Court to hold joinder proper under Rule 8(a) because they all arise out of the "same transactions or acts." Fed. R. Crim. P. 8(a).

   3. **The False Statement Charged as Count Two is "of the Same or Similar Character" as the Wire Fraud Charged as Counts Three Through Five.**

Finally, as for the false statement charged as Count 2, this Court should also hold that the charge is "of the same or similar character" as the wire fraud charges under Rule 8(a), which is another basis for joinder. The Eleventh Circuit has made clear time and again that false statement charges and fraud charges are "of the same or similar character" under Rule 8(a), in that they both involve dishonesty and willfulness. *See United States v. Barber*, 591 F. App'x 809, 821-22 (11th Cir. 2014) (false statement charge and tax fraud); *United States v. Carter*, 448 F. App'x 112, 114 (2d Cir. 2011) (passport fraud and false statement charges same or similar character because, among other things, they both "submitted a fraudulent application to a United States agency"). Indeed, the same act lies at the heart of both crimes: a materially false statement made with specific intent. *Compare* Eleventh Circuit Pattern Instruction O36 (false statement charge) *with* Instruction O51 (wire fraud) This conceptual link provides all-the-more reason for this Court to hold that joinder was proper here and that the case should proceed as one consolidated trial, consistent with Rule 8 and Eleventh Circuit law.

   B. **This Court Should Decline to Sever These Properly Joined Counts Because Their Evidence is Inextricably Intertwined and Separate Trials Would Be a Profound Waste of Resources.**

The Defendant is no more successful on the Rule 14 front, with Rule 14 considerations only further counseling in favor of trying the Indictment's five counts together. Under Rule 14(a), a court "*may* order separate trials" where "the joinder of offenses … appears to prejudice a

14

defendant or the government." Fed. R. Crim. P. 14(a) (emphasis added). The Eleventh Circuit has made clear that this is an extraordinary remedy that district courts should hesitate to grant—that, to repeat one final time, "[t]he circumstances justifying severance are few and far between," *Mosquera*, 886 F.3d at 1041 (emphasis added). Moreover, as to any alleged prejudice that may result from charging two crimes in the same indictment, the Eleventh Circuit has made clear that "[s]everance is not required when the possible prejudice may be cured by a cautionary instruction," *United States v. Slaughter*, 708 F.3d 1208, 1213 (11th Cir. 2013), and that there is a "presumption that jurors are able to follow the court's instruction to separately consider the evidence relating to each count." *United States v. Bowers*, 811 F.3d 412, 423 (11th Cir. 2016). That said, the advisory comments for this Rule are clear that "the question whether to grant a severance is generally left within the discretion of the trial court," *see* Fed. R. Crim. P. 14 (1966 advisory committee note), and the Eleventh Circuit has made clear that "appellate courts are generally reluctant to second guess a district court's decision on severance," *United States v. Baker*, 432 F.3d 1189, 1236 (11th Cir. 2005).

In terms of the showing that the Defendant must make to carry his "heavy burden," the Eleventh Circuit has held that a defendant "speculat[ing] about the possibility of prejudice" is insufficient, with error "requir[ing] more than some prejudice be shown; the appellant must demonstrate that he received an unfair trial and suffered compelling prejudice." *Bowers*, 811 F.3d at 423-24 (cleaned up); *see also United States v. Annamalai*, 939 F.3d 1216, 1223 (11th Cir. 2019) (circuit court "reverse[s] only if improper joinder affected substantial rights and resulted in actual prejudice because it had substantial and injurious effect or influence in determining the jury's verdict."); *Mosquera*, 886 F.3d at 1041 ("It is not enough that a defendant argues he may have a better result had the trials been severed."). And even where there is some purported need

15

for severance, the Eleventh Circuit has made clear that considerations of judicial efficiency can overcome those concerns, with considerations on this front including "the inefficiencies implicit in a second trial that would have included many of the same witnesses." *United States v. Pruitt*, 763 F.2d 1256, 1263 (11th Cir. 1985).

Five factors counsel against severing the case under Rule 14 here. The first is simple: because the joinder is proper, "it is unnecessary to discuss whether [the defendant can] show[] actual prejudice." *Dominguez*, 226 F.3d at 1242. Second, the Defendant's Motion offers this Court only conclusory and illogical claims to support his request, which fails to "carry the heavy burden of demonstrating that compelling prejudice would result" from a single trial. *Mosquera*, 886 F.3d at 1041. The Defendant's Motion cries foul that the "counts will hopelessly prejudice the Jury against Mr. McCabe," Mot. at 1, but never explains why that is so beyond the obvious and universal fact that any multi-count case involves multiple crimes. Indeed, the Motion delves into the specific only once, when the Defendant claims that "[d]isclosing to the jury that Mr. McCabe received financial gain from the government subsequent to the death of M.C.G.F. would all but guarantee that Mr. McCabe would not receive a fair trial," Mot. at 2, but that claim does not bear scrutiny in two respects. For one, there is no reason to suppose that there is anything about the charges here so inflammatory that it would cause a jury to be unable to follow instructions. To the contrary, the Eleventh Circuit routinely rejects arguments that violent crimes joined to fraud counts create the type of prejudice warranting severance, *see, e.g., Mentor*, 570 F. App'x at 899 (defendant "only advanced conclusory allegations of prejudice and failed to satisfy his heavy burden of showing compelling prejudice" in case with robbery/homicide counts joined to fraud counts), and the Defendant does not and cannot cite a single case where a court has held a violent crime to inflame a jury as to a fraud count—much less the other way around as the

16

Defendant would have it. In that way, the Defendant's unprecedented claim that a fraud charge would inflame the jury as to a violent crime cannot carry the heavy burden that he needs it to for severance.

But even beyond that, the claim does not gel with his Not Guilty plea: by proceeding to trial, Mr. McCabe is inherently claiming that he received those PPP funds legitimately, like any other small business during the COVID era, and that the PPP funds came after he was wrongfully accused of negligently killing M.C.G.F., which is essentially what he claims repeatedly in his SF-95 form when he filed an administrative claim against the USCG for shutting down his business. In that way, the Defendant's PPP loans are as logical a part of his defense as they are of the Government's prosecution.

The Defendant's other specific claim, that trying the Indictment's counts together will prejudice his ability "to testify in the Seaman's Manslaughter case but not the fraud cases," Mot. at 2, is similarly unavailing. The Eleventh Circuit has long held that "[s]everence is not mandatory simply because a defendant indicates that he wishes to testify about some counts but not on others," *United States v. Forrest*, 623 F.2d 1107, 1115 (5th Cir. 1980); *Hersh*, 297 F.3d at 1243 n.15 (quoting *Forrest*), and the Supreme Court has made clear that "[i]t would impair both the efficiency and the fairness of the criminal justice system to require, in all these cases of joint crimes where incriminating statements exist, that prosecutors bring separate proceedings, presenting the same evidence again and again, requiring victims and witnesses to repeat the inconvenience (and sometimes trauma) of testifying…." *Richardson v. Marsh*, 481 U.S. 200, 210 (1987). Rather, "to establish that the joinder of charges kept him from testifying, [a defendant] must show that the charges were distinct in time, place, and evidence, that there was 'important' evidence that he might have offered on one set of charges but could not, and that he had a

"strong need" not to testify on the other counts." *Hersh*, 297 F.3d at 1242 n.15. Which is all to say, "compelling prejudice is not established merely because the defendant would like to testify regarding some counts but not others." *United States v. Shuler*, 373 F. App'x 949, 953 (11th Cir. 2010). In the face of this, the Defendant offers nothing more than "a generalized desire to testify as to some counts but not others," which the Eleventh Circuit has held insufficient. *United States v. Corbin*, 734 F.2d 643, 649 (11th Cir. 1984). Indeed, to consider a defendant's ability to testify about one count versus another as a basis for severance would mean that any given case would need to be tried with one trial after another, count by count. That is not what Rule 8, Rule 14, the Eleventh Circuit, or common sense contemplate, and this Court should not follow the Defendant down that illogical path.

Beyond joinder being proper and the Defendant's failure to meet his heavy burden thorough his Motion, a third factor counsels against a Rule 14 severance: that overlapping witnesses and evidence favor a single trial in this case, which matters in two respects. For one, the Eleventh Circuit has recognized the "vital role in the criminal justice system" that consolidated trials play in "reduc[ing] the risk of inconsistent verdicts and the unfairness inherent in serial trials, lighten[ing] the burden on victims and witnesses, increas[ing] efficiency, and conserv[ing] scarce judicial resources." *United States v. Lopez*, 649 F.3d 1222, 1233-34 (11th Cir. 2011). But on top of that, the fact that the seaman's manslaughter evidence would be admissible at the PPP fraud trial further undermines the notion that undue prejudice would result, *see Fernandez*, 374 F. App'x at 920 (no prejudice where evidence would have been admitted even if the count itself had been severed).[5] As already explained, the Defendant's killing of

---

[5] To the extent that the PPP fraud would not be admissible in the seaman's manslaughter trial and the defense now claims that the PPP fraud would be more prejudicial than the manslaughter,

M.C.G.F. is inextricably intertwined with the Defendant's PPP fraud because it tends to prove that he was not operating Florida Scuba in 2020 and 2021 as he claimed. In that way, many of the witnesses necessary to prove up M.C.G.F.'s death aboard the Vessel, including M.C.G.F.'s husband S.F., would need to testify in two separate trials if the case were severed. And two witnesses, S.B. and J.S., would be providing testimony in the first trial relating to the Defendant's killing of M.C.G.F. and then at the second trial about his PPP fraud.

Fourth, there is no risk of the seaman's manslaughter and wire fraud charges bleeding over into each other in terms of guilt because they are distinct but related defenses. The same is true of the false statements and wire fraud charges. *See United States v. Furman*, 31 F.3d 1034, 1037 (10th Cir. 1994) ("We find nothing in the record to support Defendant's contention that the evidence concerning the false statement count 'spilled over' and damaged his credibility before the jury or prevented him from adequately presenting a defense on the bank fraud and misapplication of funds counts."). Which is just to say, the defense offers no reason to believe that the jurors will be unable to distinguish the one charge from the other, which further counsels in favor of trying them all together.

Finally and relatedly, there are no extenuating or extraordinary circumstances that could cast doubt on jurors' ability to follow the instructions like in any other multi-count case. The Eleventh Circuit has routinely denied Rule 14 challenges where a violent crime was joined with a nonviolent crime because "[l]imiting instructions of this kind are presumed to protect against prejudice in joint trials." *Condon*, 132 F.3d at 658 (limiting instructions for arson and mail fraud adequate); *see also Bowers*, 661 F.3d at 423; *Slaughter*, 708 F.3d at 1213. Here, the Court will receive the same B10.2 instruction that all juries in the Eleventh Circuit confronting a single

---

*see* Mot. at 2, the Government responds that the notion that PPP fraud carries the type of prejudice the defense suggests has no grounding in law or common sense.

defendant with multiple counts charged against him do, and there is no reason to suppose that this case is the exceptional—indeed, the unprecedented—case where the bare fact of a defendant facing multiple counts where one is violent and the others involve false statements is sufficient to warrant the extraordinary remedy of affording that defendant two separate trials, which here would mean summoning two separate juries to hear at least a week of testimony in each case, summoning many witnesses for both trials, and consuming resources from this Court, the Government, and the Defendant's defense counsel. For all these reasons, this Court should deny the Motion and hold one trial for the five counts here.

## IV.   CONCLUSION

For the foregoing reasons, this Court should deny the Motion by declining to sever the Indictment's false statement and seaman's manslaughter charges from the wire fraud counts.

Respectfully submitted,

MARKENZY LAPOINTE
UNITED STATES ATTORNEY

Date: January 6, 2025          By: /s/ Zachary A. Keller
                                   ZACHARY A. KELLER
                                   Assistant United States Attorney
                                   U.S. Attorney's Office – SDFL
                                   Court No: A5502767
                                   99 NE 4th Street, 6th Floor
                                   Miami, Florida 33132
                                   Tel: (305) 961-9023
                                   Email: zachary.keller@usdoj.gov

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on January 6, 2025, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.

/s/ Zachary A. Keller
ZACHARY A. KELLER
Assistant United States Attorney