**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 24-80103-CR-CANNON**

**UNITED STATES OF AMERICA**

v.

**DUSTIN SEAN McCABE,**

    **Defendant.**
_____/

**USA′S OMNIBUS RESPONSE TO PSI OBJECTIONS AND SENTENCING MEMO**

Over seven trial days, this Court saw evidence that included not just what happened on March 28 and 29, 2020, but also the Defendant's total lack of remorse for killing M.C.G.F. That lack of remorse bled through not just his demeanor during the gut-wrenching testimony that it took to convict him but also through his own testimony in which he told lie after lie in a desperate but unsuccessful attempt to avoid prison. The Government said from the beginning that this case was fundamentally about his lies and his recklessness, and that bore out in the trial, showing that the final people the Defendant lied to were the jury, the Court, and perhaps himself. The June 12 sentencing in this case is this Court's opportunity to take this all into account to fashion a just and proper sentence—one that gives justice to M.C.G.F.'s family and friends, to the West Palm Beach scuba community, and to broader society in accordance with the sentencing factors set forth in Section 3553(a).

Through this Response, the Government responds to the Defendant's Objections (DE 115) and Addendum Objections (DE 116) to the Presentence Investigation Report ("PSI"), asking this Court to deny the Defendant's Guidelines objections and to rule that the appropriate range is 63 to 78 months in prison. From there, this Response asks the Court to sentence the Defendant to the top

of those Guidelines, with a 78-month sentence the only sentence that meets the Section 3553(a) factors in this tragic case.

### I.  FACTUAL BACKGROUND

The Government submitted a 10-page factual recitation of the trial case in its response to the Defendant's motion for acquittal, *see* DE 98 at 2-11, and incorporates that by reference.

### II.  LEGAL STANDARD

#### A. *Guidelines Sentencing Enhancements*

A sentencing court's findings of fact may be based on undisputed statements in the PSI. *United States v. Wilson*, 884 F.2d 1355, 1356 (11th Cir. 1989). Where a defendant objects to the factual basis of his sentence, the government has the burden of establishing the disputed fact by a preponderance of the evidence. *United States v. Sepulveda*, 115 F.3d 882, 890 (11th Cir. 1997). If no party objects to allegations of fact contained in a PSI, the fact is admitted for sentencing purposes. *United States v. Wade*, 458 F.3d 1273, 1277 (11th Cir. 2006). Furthermore, objections to facts in the PSI "must be asserted with specificity and clarity … [o]therwise, the objection is waived." *United States v. Bennett*, 472 F.3d 825, 832 (11th Cir. 2006); *United States v. Aleman*, 832 F.2d 142, 145 (11th Cir. 1987). Vague assertions of inaccuracies are not enough to raise a factual dispute. *United States v. Ramirez-Flores*, 743 F.3d 816, 824 (11th Cir. 2014); *United States v. Shelton*, 400 F.3d 1325, 1330 (11th Cir. 2005); *United States v. Norris*, 50 F.3d 959, 962 (11th Cir. 1995). "This requirement is not gratuitous; rather, it ensures that the government has an opportunity to address or correct the alleged error." *Id*. If a defendant fails to object, the burden does not shift to the government to prove the disputed facts. *Bennett*, 472 F.3d at 832 ("Where a defendant objects to the factual basis of his sentence, the government has the burden of establishing the disputed fact. ... Otherwise, the objection is waived.").

### B. This Court's Authority to Fashion an Appropriate Sentence

While the Sentencing Guidelines were once mandatory, the Supreme Court changed the sentencing landscape in *United States v. Booker*, 543 U.S. 220 (2005), by "invalidat[ing] the mandatory features of the Guidelines." *Irizarry v. United States*, 553 U.S. 708, 713 (2008). With *Booker* as the law of the land, courts entered the era of "advisory Guidelines," where picking "a sentence outside the Guidelines carries no presumption of unreasonableness." *Id.* at 713-14 (citing *Gall v. United States*, 552 U.S. 38, 51 (2007)). So now, instead of rotely choosing a Guidelines sentence, the Court must also assess whether a sentence is reasonable under the 18 U.S.C. § 3553(a) factors and "the totality of the circumstances." *Id.*; *see also United States v. Irey*, 612 F.3d 1160, 1189-90 (11th Cir. 2010) (en banc).

That framework means that the Court's sentence "should fit the offender and not merely the crime." *Pepper v. United States*, 562 U.S. 476, 487 (2011). To that end, a district court should impose a prison term that is "sufficient, but not greater than necessary, to comply with the purposes" of sentencing. 18 U.S.C. § 3553. The "purposes of sentencing" under 18 U.S.C. § 3553(a) include (1) "the nature and circumstances of the offense," (2) "the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense," (3) "to afford adequate deterrence to criminal conduct," and (4) "to protect the public from further crimes of the defendant." A sentence only runs afoul of that mandate if it "lies outside the range of reasonable sentences dictated by the facts." *Irey*, 612 F.3d at 1190 (quotations omitted). In assessing those facts, "[t]he weight to be accorded any given § 3553(a) factor is a matter committed to the sound discretion of the district court, and the court is permitted to attach great weight to one factor over others." *United States v. Riley*, 995 F.3d 1272, 1279 (11th Cir. 2021) (cleaned up). Indeed, "[t]hat is what discretion in weighing factors is about," *id.*, and "discretion in weighing

3

sentencing factors is particularly pronounced when it comes to weighing criminal history," *id.* A court levies an unreasonable sentence only when it "(1) fails to afford consideration to relevant factors that were due significant weight, (2) gives significant weight to an improper or irrelevant factor, or (3) commits a clear error of judgment." *Id.* at 1189 (quotations omitted).

### III. ARGUMENT

The Defendant's Objections borrow a page from his testimony at trial: he contests virtually everything but leaves the law out of it. Through this Response, the Government brings the law to bear, showing that the Defendant's many Guidelines- and restitution-related objections are without merit. After doing so, the Government sets forth three reasons that this Court should sentence the Defendant to 78 months in prison, the top of his advisory Guidelines range: (1) the extreme recklessness of his conduct, (2) the unrelenting, brazen lies he chose to tell from the witness stand, and (3) his crimes of conviction that are not accounted for in the Guidelines score. Each of these factors show why the Defendant's Guidelines range is appropriate and why he should receive the highest possible sentence within it.

#### A. The Defendant's Guidelines-Related PSI Objections are Meritless.

This Court should deny the Defendant's Guidelines-related objections because, as the following explains, they have no grounding in the facts presented at trial.

#### 1. Initial Objections, DE 115

The following responds to the initial objections set forth at Docket Entry 115:

"Objection 1: Language Implying Direct Causation of Death." The defense now contests that his negligence caused M.C.G.F.'s death, Obj. at 1, but that causal relationship was a necessary element of the jury convicting him, *see* DE 77 at 12. For that reason, and because the facts presented at trial overwhelmingly supported the jury's verdict, the Court should overrule this

4

objection.

"Objection 2: Prosecutorial Language in Fraud Descriptions." The defense claims that the Defendant's having engaged in a scheme and having unjustly enriched himself is "beyond the jury's verdict," Obj. at 1-2, but the jury convicted the Defendant of precisely that. That the Defendant engaged in a scheme isn't just in the indictment; it's in the jury instructions too as a necessary element (Element 1) of the wire fraud charges. *See* DE 77 at 15. And that the Defendant unjustly enriched himself was apparent from the trial evidence, which showed the Defendant to have pocketed the money and to have spent it on things like a golf club membership while writing checks to cash to himself.

"Objection 3: Language Suggesting Intent Beyond the Verdict." The Government does not oppose the PSI including the Defendant's proposed addition that he was "convicted of submitting PPP loan applications containing material misstatements" but does oppose the defense's request that the PSI eliminate anything about the Defendant profiting. The evidence presented at trial showed that the Defendant secured the PPP loans at issue and spent them on, among other things, a golf club membership, and the jury found the Defendant guilty of having secured those funds fraudulently. This evidence presented at trial is sufficient for this Court to retain the PSI's language on this front that the Defendant here opposes.

"Objection 4: Obstruction of Justice Language Based on Alleged Perjury." The defense opposes the two-level enhancement applied for perjury by reasoning that "Mr. McCabe was never charged with perjury, and the Court has made no formal finding that he willfully provided false testimony." Obj. at 2. These two bases for objection are improper because a defendant does not need to be charged with perjury for the obstruction enhancement to apply and because this Court has not had the opportunity to make a finding about his having perjured himself—something it can

and should do at sentencing. And while the Defendant does not appear to contest the fact that he did indeed lie repeatedly on the stand, *see* Obj. at 2, this Court will find itself to have many bases to make just that finding based on the Defendant's many lies during his full day of testimony—a series of lies discussed further in Section III.B. below.

"Objection 5: Inclusion of Funeral Expenses and Emotional Losses." The defense claims that 18 U.S.C. § 1115 "is not a qualifying offense under the Mandatory Victim Restitution Act," and that "[r]estitution for emotional suffering, funeral costs, or death-related losses is not legally permissible unless expressly authorized by statute." He is wrong in three respects. *First*, the defense confuses *mandatory* restitution with *permissible* restitution. He cites to 18 U.S.C. § 3663**A** to support the notion that restitution is not owed here,[1] but in fact 18 U.S.C. § 3663 applies to any "a defendant convicted of an offense under this title" (i.e., Title 18) and authorizes this Court to "order, in addition to … any other penalty authorized by law, that the defendant make restitution to any victim of such offense, or if the victim is deceased, to the victim's estate." The same statute further provides that where a crime "results in the death of a victim," this Court may order the Defendant to "pay an amount equal to the cost of necessary funeral and related services," though the Government agrees that emotional damages are not permissible. *See, e.g., United States v. Estate of Parsons*, 367 F.3d 409, 422 (5th Cir. 2004) (en banc) (Dennis, J., concurring in part) ("[T]he court cannot order restitution for compensatory damages related to pain, suffering, mental or emotional distress or for punitive damages.").

---

[1] The Government agrees that seaman's manslaughter does not fall within Section 3663A's strictures because involuntary manslaughter is not a "crime of violence" as defined. *See United States v. Benally*, 19 F.4th 1250, 1258 (10th Cir. 2021) ("[I]t is beyond dispute that the district court erred in ordering Benally to pay restitution under the MVRA. Benally's offense of conviction—involuntary manslaughter in Indian Country—is not a "crime of violence" and does not otherwise fall within the scope of the MVRA.").

6

"**Objection 6: Inclusion of Non-Adjudicated Employment Complaints.**" The Government does not oppose the PSI including the Defendant's response provided in his Objections to prior employment complaints against him, but the Government submits that the language should be included in the PSI as relevant to the Defendant's history and characteristics. The defense does not appear to contest the factual claim that these complaints occurred but rather the weight they are given; in this respect, and the defense is free to argue that at sentencing. But for PSI purposes, the Government submits that these facts should be included because they are relevant to his history.

"**Objection 7: Language Suggesting Evasion or Dishonesty.**" The Defendant now claims that his walking away from a law enforcement conversation never happened and that he never "misrepresented the purpose of his boat," Obj. at 3, but these claims are belied by the trial testimony and the jury's verdict on Count 2. That the Defendant lied about the purpose of his vessel to the United States Coast Guard is apparent from the jury convicting him of making a false statement about precisely that fact, and that he walked away from law enforcement initially was testified to by Sandra Brammeier and David Fowler. That said, it is true that the Defendant ultimately gave a post-*Miranda* statement, which was discussed at trial while impeaching the Defendant.

"**Objection 8: Use of Guidelines Language Absent Enhancement.**" The defense curiously claims that "the Probation Office did not formally apply enhancements under U.S.S.G. §§ 3B1.3 (abuse of trust) or 3B1.1 (aggravating role)," but that is not so. Rather, Paragraph 45 applies a two-level enhancement under Section 3B1.3, which reflects the position of trust that the Defendant occupied in captaining the ship. *See* PSI at 15. For that reason, this Court should deny this objection as being based on a misreading of the PSI before it.

"Objection 9: Mischaracterization of Recreational Vessel Classification." The defense objects to the PSI's reference to his lying about the purpose of the M/V SOUTHERN COMFORT to the USCG, Obj. at 4, but that is precisely what the Defendant was convicted of having done as to Count 2. Because the Government's evidence on this front, which included several witnesses testifying that the Defendant discussed the commercial purpose of the M/V SOUTHERN COMFORT well before he bought it and then lied on the paperwork by claiming it to be for recreational use, this Court should deny this objection based on the facts at trial.

"Objection 10: Misleading Narrative Regarding PPP Forgiveness Documentation." The defense objects to the PSI referring to his PPP loan being fraudulent based on faulty documentation, but this Court should deny that objection because the Defendant included false tax returns with his applications. The Government introduced evidence that the Defendant provided a false Schedule C for his 2020 loan application and a falsified corporate income tax return for his 2021 one, with the evidence of those documents being falsified consisting of an Internal Revenue Service employee testifying that the Defendant never filed the documents and the Defendant's ex-wife and former business partner, who testified that she'd never seen the documents and that they never made anything close to the income that the documents claimed. For these reasons, this Court should overrule this objection as well.

2. *Supplemental Objections*

The following responds to the "addendum" objections set forth at Docket Entry 116:

Addendum Objection 1: "Mental Health History and Bureau of Prisons Medical Designation." The Government does not object to the addition of these facts regarding the Defendant's psychiatric history.

Addendum Objection 2: "Request to Bypass FCI Miami Intake." The Government defers

to the Court as to the Defendant's designation request and does not object to the inclusion of this request in the PSI.

Addendum Objection 3: "Pretrial Monitoring and Holiday Restrictions." The Government opposes the Defendant's request that his time on pretrial monitoring and so-called "holiday restrictions" be counted as time in custody. The defense itself admits that this time is "not custodial time in the legal sense," Addendum at 2, and neither of the cases he cites supports his request that his time on bond be credited toward his incarceration or be a basis for a downward departure. The defense's case *United States v. Mateo*, 299 F. Supp. 2d 201, 211-12 (S.D.N.Y. 2004), involved downward departure for a woman who was raped and otherwise abused during her pretrial confinement, which the court there held to be a basis for a downward departure to her ultimate sentence. The defense's *United States v. Peters*, 2020 WL 2092617 (D. Conn. May 1, 2020),[2] is similarly inapposite, involving a compassionate release relating to COVID-19. This case is far afield from those, where the Defendant has been on typical pretrial release up to the day the jury convicted him. Because the defense's request is untethered to law or basic common sense, this Court should deny this request.

Addendum Objection 4: "Restitution Context – Civil Settlement Paid." The Government does not object to the inclusion of the civil settlement in this case being included in the relevant sentencing facts but does contest whether they should receive any weight. The defense cites *United States v. Kim*, 364 F.3d 1235, 1245 (11th Cir. 2004), but there the defendants made payments themselves in an extraordinary fashion, paying back 140 percent of the amount they'd benefitted while, for example, "dipp[ing] significantly into their life savings and voluntarily undert[aking] an enormous amount of debt" to pay their restitution. This case is nothing like that, with an insurance

---

[2] Though the Addendum lists this as a District of Nebraska case, it is a District of Connecticut one.

company paying out on a policy it was obligated to at least litigate and the Defendant himself not paying a dime. In this respect, while the Government does not oppose including these facts, they deserve zero weight from this Court in determining an appropriate sentence.

Addendum Objection 5: "Abrupt Remand and Loss of Closure." The Government does not oppose the PSI including the Defendant's narrative about being taken into custody. That said, the Government would note that the Defendant's surprise at being remanded is itself surprising considering the governing statute, 18 U.S.C. § 3143, expressly contemplates detention for defendants who are awaiting sentencing absent a finding by clear and convincing evidence that the defendant is not a risk of flight or danger to the community. In that respect, the Government submits that the Defendant's concerns regarding his having been detained should be given zero weight in determining an appropriate sentence.

Addendum Objection 6: "Family History and Psychological Background." The Government does not object to the inclusion of the Defendant's proposed additional family history.

Addendum Objection 7: "Status of Defendant's Therapy Dog." The Government does not object to the inclusion of the Defendant's proposed additional personal history.

Addendum Objection 8: "Clarification of Alcohol Use History." The Government does not object to the inclusion of the Defendant's proposed additional personal history.

Addendum Objection 9: "Civil Settlement Already Paid to Victim's Family." The Government does not oppose the Defendant including facts relating to a civil settlement by an insurance company but does oppose his attempt to offset his restitution against the civil settlement. The Government takes this position because the Defendant's point about a general settlement does not meet his burden of showing that the settlement pertained to the specific expenses covered here, such as funeral expenses. This position echoes the Sixth Circuit's analysis in *United States v.*

*Sizemore*, 850 F.3d 821, 828-29 (6th Cir. 2017), which involved nearly identical facts to those here—a manslaughter followed by an insurance payment. Moreover, even were there to be a restitution offset here as the victims, that offset would be counterbalanced by the Defendant's restitution owed to the third party who paid off his claim, the insurance company. *See, e.g., United States v. Bright*, 353 F.3d 1114, 1122 (9th Cir. 2004) (third-party payor "would step in the victims' shoes as a subrogee of their restitution claims against" the defendant pursuant to 18 U.S.C. § 3664(j)(1)). For these reasons, the Government opposes any restitution adjustment as to the Defendant under the facts he presents.

Addendum Objection 10: "Factors Warranting Downward Departure or Variance." The Government opposes a downward variance for the same reason it requests a top-of-the-Guidelines sentence in Section B below.

### B. A Top-of-the-Guidelines Sentence Here Properly Reflects the Defendant's Degree of Negligence and His Many Brazen Lies While Testifying at Trial.

Through this Response, the Government also respectfully submits that a top-of-the-Guidelines sentence of 78 months in prison is the appropriate sentence to reflect the sentencing factors set forth in Section 3553(a)—namely, "the nature and circumstances of the offense," "the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense," as well as to "afford adequate deterrence to criminal conduct." 18 U.S.C. § 3553(a)(1) & (2)(A)-(B). Specifically, the following three aspects of the Defendant's conduct warrant a sentence that goes beyond the top of the Guidelines range here, making a sentence of 78 months wholly appropriate:

*First,* the Guidelines do not fully account for the degree of recklessness the Defendant's conduct here, which easily surpassed even gross negligence when only simple negligence was required. The Defendant operated a scuba charter business and had been doing so for many years,

11

and every fact witness who testified at this trial attested to the known danger that propellers present to scuba passengers. Indeed, passengers by the very nature of scuba diving go near the spinning blades to enter and exit the vessel, so scuba divers and captains are hyperaware of the danger that propeller malfunctions can present. That extreme danger is echoed in the USCG's marine casualty requirements, which require for *any* captain, not just scuba, that they report losses of propulsion. Yet the Defendant simply didn't care; as shown at trial, he knew full well that his propeller had a serious malfunction, and he chose to bring out a group the following day and expose them to that danger without so much as a passing warning. This conduct rises beyond the negligence standard that the Guidelines contemplates and weighs in favor of a sentence at the top of his Guidelines.

*Second*, while the Guidelines provide a two-point enhancement for his obstructing justice, that two level enhancement fails to fully account for the dizzying scope of the Defendant's lies. Over an entire day of trial testimony, the Defendant lied about virtually every aspect of this case in the face of overwhelming evidence. He lied about the vessel running aground when five separate witnesses testified it had. He lied about the fake income tax forms he submitted being part of the PPP loan application packages when the bank representatives had just finished testifying about precisely that fact. He lied about what killed M.C.G.F., drawing on an easel in a desperate attempt to convince the jury that the coastal current somehow caused the deep chop wounds that she'd sustained. He lied about the M/V SOUTHERN COMFORT's registration and his filing his PPP loans by claiming that he called the respective people and that they'd told him to do it. He lied about knowing there was an engine problem, which led the Government to impeach him with a prior statement where he acknowledged there was one. By the end, his lies covered every count and the testimony from virtually every witness the Government presented, and the jury rightly rejected his claims by convicting him. The Government respectfully submits that the scope of these

lies go far beyond what the Section 3B1.1 obstruction enhancement contemplates, in that the Defendant's testimony was so replete with lies that it went beyond obstructing justice to making a mockery of the entire proceeding. For those reasons, the Defendant's testimony is a second basis for this Court to sentence the Defendant to a top-of-Guidelines sentence.

*Third*, the Defendant's other crimes are not factored into the Guidelines but demonstrate a disregard for the law that compels them to be accounted for. The Defendant's response to committing the crime of involuntary manslaughter was to move to intentional, willful fraud. While the Guidelines' multi-count provisions have a system of accounting for other crimes, they do not always account for situations like this one where one crime leads to another. To promote respect for the law, the Government respectfully submits that even if these other crimes did not move the Guidelines range, they are nevertheless a compelling reason for this Court to sentence the Defendant to the top of the Guidelines range.

### IV.   CONCLUSION

For the foregoing reasons, the Court should sentence the Defendant to 78 months in prison for the crimes at issue in this tragic case.

Respectfully submitted,

HAYDEN P. O'BYRNE
UNITED STATES ATTORNEY

Date: May 30, 2025         By: */s/ Zachary A. Keller*
                               ZACHARY A. KELLER
                               Assistant United States Attorney
                               US Attorney's Office – SDFL
                               Court No: A5502767
                               99 NE 4th Street, 6th Floor
                               Miami, Florida 33132
                               Tel: (305) 961-9023
                               Email: zachary.keller@usdoj.gov

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on May 30, 2025, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.

/s/ *Zachary A. Keller*
ZACHARY A. KELLER
Assistant United States Attorney